**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **CEDRIC HARRINGTON, individually and on behalf of all others similarly situated,** ))))) | |
| **Plaintiffs,** )) | **CASE NO. 5:21-cv-00012** |
| **v.** )) | **JURY DEMANDED** |
| **SOUTHWESTERN BELL TELEPHONE L.P., a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC, a/k/a AT&T SOUTHWEST; and AT&T SERVICES, INC.,** ))))) | |
| **Defendants.** ) | |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff Cedric Harrington, individually and on behalf of all others similarly situated ("Plaintiffs"), for their Collective Action Complaint against Southwestern Bell Telephone L.P. and AT&T Services, Inc. (collectively, "Defendants"), state as follows:

**SUMMARY**

1.      This is a collective action brought under the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs worked for Defendants as hourly-paid, non-exempt call center employees, pursuant to the terms of a collective bargaining agreement. Plaintiffs routinely worked over 40 hours per week but were not paid for all time worked. Occasionally, Plaintiffs would work less than 40 hours in a given workweek but still work in excess of 8 hours on

one or more days during those workweeks. Pursuant to a decision, policy, or plan/practice, Defendants suffered or permitted Plaintiffs to work many hours of straight time and overtime without compensation. Plaintiff seeks to bring an action under the FLSA for all overtime minutes worked, but not paid, in workweeks where Plaintiffs were paid for at least 40 hours of work time and specifically exempting from the putative collective all plaintiffs in the *Mosley v. AT&T* progeny cases. Plaintiff also sought to grieve the claim under Article IV, Section 4 of his collective bargaining agreement for all minutes worked in excess of eight hours on any days within workweeks where Plaintiffs were paid for less than 40 hours of worktime, by presenting a grievance to his union and to Defendants nearly six months ago (see Exhibit 1), but neither the Union nor Defendants have responded to, advanced or communicated to Plaintiff regarding the grievance at all. Plaintiffs have exhausted their contractual procedures under Article XIX, Section 11 of the CBA because the only contractual procedure required under that section is for the grievance to be delivered upon the employer by anyone else other than the Union. Furthermore, Plaintiffs also qualify under all three exemptions to the exhaustion requirements of sec 301 claims because the union has wrongfully refused to process the grievance; the employers inaction for six months amounts to a repudiation of the remedial procedures specified under the contractual procedures for redress; and exhaustion would be futile because Plaintiffs would have to submit his claim to a group which is, in large part, chosen by the employer and union, against whom his real complaint is made. Thus, Defendants have breached the terms of the collective bargaining agreement between Plaintiffs and Defendants; and the Union has breached its duty of fair representation of Plaintiffs.

**COLLECTIVE ACTION COMPLAINT**                                                      - 2 -

## JURISDICTION AND VENUE

2.      This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

3.      This Court has personal jurisdiction over Defendants for reasons that include:

(a) Defendants conduct business and enter into contracts within the State of Texas and in this District, and with persons and businesses located within the State of Texas and in this District;

(b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the State of Texas and their employees who reside in this District, among other people;

(c) Defendants have purposefully directed the marketing of their telephone services at residents and businesses located in the State of Texas; and

(d) Defendants purposefully solicit Texas residents to enter into service agreements; and

(e) Defendants operated a call center in this state and in this District, where Plaintiffs worked and where some of the transactions giving rise to this lawsuit occurred.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Western District of Texas, and the causes of action set forth herein have arisen and occurred in part in the Western District of Texas.

## PARTIES

*i.      Plaintiffs*

5.     Plaintiff Cedric Harrington has worked as an employee for Defendants in this judicial district prior to the filing of this action.  A copy of Plaintiff Cedric Harrington's consent form is attached hereto as Exhibit 1.

6.     Plaintiffs have been compensated as hourly-paid, non-exempt employees of Defendants in this District during the applicable FLSA statute of limitations period.

ii.     *Defendant Southwestern Bell Telephone*

7.     Southwestern Bell Telephone, L.P. is a Texas limited partnership.

8.     Southwestern Bell Telephone, L.P. is doing business as a telecommunications firm in the State of Texas and in the Southwestern United States.

9.     Southwestern Bell Telephone, L.P. employs over 1,000 employees.

10.     Southwestern Bell Telephone, L.P. is a wholly owned subsidiary of AT&T, Inc., and it also does business as Southwestern Bell, AT&T Communications of Texas, LLC, and AT&T Southwest. It is headquartered in Dallas, Texas.

11.     At all times prior to the filing of this Complaint through the present, Southwestern Bell Telephone, L.P. was engaged in the business of, among other things, operating call centers staffed in part by Plaintiffs in the Southwestern United States, including Dallas, Texas; Norman, Oklahoma; San Antonio, Texas; and other call centers in Defendants' Southwest region, including in Missouri, Kansas, Oklahoma, and Arkansas.

12.     Southwestern Bell Telephone, L.P. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement. A copy of the Collective Bargaining Agreement is attached as Exhibit 1.

13.     Southwestern Bell Telephone, L.P. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union representing plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

14.     Southwestern Bell Telephone, L.P. violated the Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data; (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of eight minutes or less.

15.     The work performed by Plaintiffs benefitted Defendant Southwestern Bell Telephone, L.P.

16.     Southwestern Bell Telephone, L.P. employs, manages, and/or controls the coaches, supervisors, and call center managers who are responsible for the day-to-day oversight, evaluation, and review of all call center representatives' performance for the call centers at issue in this case. This includes, *inter alia,* reviewing job performance, administering discipline, and/or terminating the employment of call center representatives.

17.     Southwestern Bell Telephone, L.P. has had the power to hire and fire employees, including Plaintiffs, it supervised and controlled employee work schedules or conditions of payments for those employees, it determined the rate and method of payment for work performed by those employees, and it maintained employment records for those employees, as specifically set forth in the "AT&T Corporate Code of Conduct", a written directive issued by AT&T through Southwestern Bell Telephone, L.P. to all AT&T

employees and through other human resources and personnel directives issued nationwide.

18. At all relevant times, Southwestern Bell Telephone, L.P. exercised control over and was the "employer" and/or a "joint employer" of Plaintiffs, as the term "Employer" is defined under the FLSA.

### iii. Defendant AT&T Services, Inc.

19. AT&T Services, Inc. is a Delaware corporation, formerly known as "SBC Services, Inc."

20. AT&T Services, Inc. provides transaction processing services, billing, payroll, accounts payable, customer remittance, fixed assets record keeping, GL processing, personnel management and specialized services to the parent companies and to related affiliates, including Defendant Southwestern Bell Telephone, L.P., in this judicial district.

21. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures as well as termination criteria.

22. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

23. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team," who were

charged with recording attendance, job performance, discipline, and termination at each of the call centers at issue in this lawsuit.

24.     AT&T Services, Inc. has processed the payroll for Plaintiffs and issued them payroll checks.

25.     AT&T Services, Inc. has had the power to hire and fire employees, including Plaintiffs, it has supervised and controlled employee work schedules or conditions of payments for those employees, it has calculated and determined the rate and method of payment for work performed by those employees, and it has maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

26.     AT&T Services, Inc. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs and is one of three parties referred to as "the Company" in that collective bargaining agreement.

27.     AT&T Services, Inc. is reflected as the employer on Plaintiffs' statement of earnings, taxes and allotments (i.e., pay stubs).

28.     At all relevant times, AT&T Services, Inc. exercised control over and was the "employer" or a "joint employer" of Plaintiffs, as the term "Employer" is defined under the FLSA.

29.     AT&T Services, Inc. violated the AT&T Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data; (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of eight minutes or less.

30.     The work performed by Plaintiffs benefitted Defendant AT&T Services, Inc.

31.     Defendants directed, implemented, and controlled the policies and practices at issue in this lawsuit. Further, Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay lawful compensation to Plaintiffs ratified and implemented the wage and rounding policies and practices used on Plaintiffs and the class members.

## FACTUAL BACKGROUND

32.     Plaintiffs have worked as call center employees for Defendants, along with thousands of other call center employees employed by Defendants, during the relevant limitations period prior to the filing of this action.

33.     Plaintiffs' job duties while employed included speaking via telephone with customers, former customers, and potential customers of Defendants' internet, television, telephone, and related services.

34.     Plaintiffs are typically scheduled to work for forty (40) hours per week.

35.     Plaintiffs and their coworkers arrive for work in the morning and typically begin the process of logging on to various computer programs they use in their duties, which can take several minutes.

36.     Plaintiffs and their coworkers are expected by their employers to be ready and available to receive telephone calls at the beginning of their scheduled shift time by turning on their mechanical equipment and by logging onto and operating a variety of software programs used in their work (herein, their "ready and available" status).

37.     Defendants' supervisors and others, including but not limited to members of Defendants' "Force Team", carefully monitored Plaintiffs to ensure they are ready and available to begin work and to receive calls at the beginning of their scheduled shift times.

38.     Plaintiffs must necessarily perform uncompensated work prior to the start of their shifts. This time is tracked by Defendants' operating system; however, Defendants have failed to require their Force Team members to use that data for compensation and payroll purposes.

39.     Defendants have required Plaintiffs to log out of their ready and available status for both their two fifteen-minute breaks and their meal break, during each shift that they work.

40.     The end-of-day log-out process consists of Plaintiffs closing certain computer programs they have used during their work day, that log the actual time that Plaintiffs log out of those programs. Also logged is the actual time that the programs close, and when the Plaintiffs log out of the live phone system and out of their remote computer terminals at the end of their work day. Defendants have provided logs of such information for other employees reflecting this data.

41.     Plaintiffs receive telephone calls from Defendants' customers who typically express various questions and concerns about the customers' service, including equipment issues, and finances, upgrading or downgrading service, among others. Each call typically lasts an average of 5-30 minutes; as a result, Plaintiffs are frequently still involved with a call with one of Defendants' customers at the end of their scheduled shift time.

42.     Nonetheless, Defendants prohibit Plaintiffs from disconnecting a customer call before the call is completed, even when that call extends beyond the end of Plaintiffs' scheduled

shift. Instead, Defendants require Plaintiffs to satisfactorily complete the call before disconnecting.

43. After Plaintiffs have finished receiving calls for the day, they typically need to perform additional follow-up work in Defendants' other computer systems and applications to complete customer orders and requests received earlier during the course of their work ("after-call work"). This work is typically performed after the end time of their scheduled shift.

44. Plaintiffs frequently perform work for Defendants during their break and meal periods, including reviewing work-related information provided to them by Defendants, discussing work matters with managers and supervisors, reviewing call notes from previous call sessions, and performing after-call work.

45. To be compensated by Defendants for time worked outside their scheduled shift time (as required by law), Plaintiffs have historically been required to make an affirmative request to a management group controlled by Defendants called the "Force Team," setting forth the amount of time worked beyond the end of their scheduled shift time.

46. Defendants maintain and control a software program called IEX, which is the shared software platform that manages the work schedules of all call center representatives nationwide, including Plaintiffs.

47. Defendants utilize the schedules in the IEX software platform to pay call center representatives according to their *scheduled* shift time—not according to their *actual* time worked—unless an "exception" to the schedule is entered into the IEX software, usually by a member of the Force Team.

48.     Certain of Defendants' call centers, including at least one call center in San Antonio, which is also the last call center that Plaintiff worked at for Defendants prior to his retirement in 2020, have utilized the IEX software platform, historically and more recently, to actually record - and, upon information and belief - pay for time worked beyond the end of the employee's scheduled shift, without the employee making an independent request for that time to be processed as either Trade Time or incidental overtime.

49.     Thus, it is feasible for Defendants to record and report, for pay purposes, time worked beyond the end of the employees scheduled shift time, without the need for the employee to independently report that time for use or payment; but they have not uniformly done so.

50.     Plaintiffs are not given automatic direct access to their online IEX schedules in order to directly enter their overtime worked as an exception into the system.

51.     Instead, the exception request is required to be submitted to clerks on the Force Team, either by email, instant message, on paper, or in some other manner.

52.     Company policy requires front line supervisors, also known as "coaches," and/or certain members of the Force Team, to consistently monitor the activity of each Plaintiff that is assigned to them throughout the day, including at the end time of the Plaintiffs' scheduled shift time, and particularly when Plaintiffs are logged into the live phone system and actively receiving inbound customer calls.

53.     Company policy requires Force Team members to notify Coaches whenever Plaintiffs is logged in and performing work beyond the end time of their scheduled shift time.

**COLLECTIVE ACTION COMPLAINT**                                                      - 11 -

54.     Company policy requires certain members of the Force Team and/or other corporate employees to verify each and every independent request for Trade Time and/or incidental overtime submitted by Plaintiffs pursuant to Defendants the self-reporting timekeeping requirements.

55.     Under Company policy, an independent request for Trade Time and/or incidental overtime is "verified" by comparing the amount of minutes the Plaintiff self-reports as time worked beyond the end of their scheduled shift time and the amount of minutes the unscheduled events in the Plaintiff's IEX schedule reflects that they were active in CTI.

56.     Under Company policy, if an independent request for Trade Time and/or incidental overtime reports more minutes worked beyond the end time of the Plaintiff's scheduled shift time than the total minutes of post-shift unscheduled events reflected in the Plaintiff's IEX schedule, the independent report is discarded and the minutes contained in the unscheduled events of the Plaintiff's IEX schedule is used to record and report, for use or pay purposes, the amount of Trade Time and/or incidental overtime that the Plaintiff worked that day.  This process is completed when the Force Team member and/or other corporate employee enters the unscheduled event as an "exception" to the Plaintiff's scheduled shift time for that day, converting the event to a "scheduled" event for payroll processing.

57.     Under Company policy, if an independent request for Trade Time and/or incidental overtime reports less minutes worked beyond the end time of the Plaintiff's scheduled shift time than the total minutes of post-shift unscheduled events reflected in the Plaintiff's IEX schedule, then the independent report is used to record and report, for use or pay purposes, the amount of Trade Time and/or incidental overtime that the Plaintiff

worked that day.  This process is completed when the Force Team member and/or other corporate employee enters an "exception" to the Plaintiff's scheduled shift time for that day, in the amount of the time independently reported by the Plaintiff, for payroll processing.

58.     However, if no exception request is submitted, then Plaintiffs are not paid for time worked beyond their scheduled shifts—even though Defendants can literally see them working, they have records of that work, or are otherwise fully aware of the fact and/or the time that Plaintiffs have worked beyond this additional time without being compensated for it, and even though, in some call centers, Defendants do not require the submission of a request by the employee in order for this work time to be recorded and reported, for pay purposes.

59.     Plaintiffs and the other employees are only paid for time outside their scheduled shift, including overtime, if they complete and submit this exception request, even though Defendants have contemporaneous electronic records of the *actual* times that Plaintiffs log in and out of the phone and operating systems and related software programs.

60.     Plaintiffs and the other employees have been required to request to be paid for all time worked beyond their scheduled shift, or else they were not paid for that time worked, throughout the relevant time.

61.     Defendants are aware that Plaintiffs regularly worked incidental overtime that was unpaid.

62.     The AT&T Code of Business Conduct ("COBC") is drafted and distributed by Defendants' parent entity AT&T, Inc., and compliance with its provisions is mandatory for Defendants and for their employees.

63. The COBC requires all supervisors of Plaintiffs to ensure that all time worked by Defendants' employees is recorded and reported for pay purposes—even if the employee did not request and/or failed to receive approval to work the additional time.

64. Managers are prohibited from permitting employees to violate the guideline set forth in the previous paragraph.

65. The COBC requires all supervisors of the Plaintiffs to review and verify the accuracy of all time reported by Plaintiffs in the pay period and by its deadline to input changes for the pay period.

66. Managers are prohibited from permitting employees to violate the guideline set forth in the previous paragraph.

67. The COBC identifies various examples of work that must be reported by Supervisors and paid to Plaintiffs, including without limitation: (1) Preparatory work before the start of the shift that is necessary for your job; (2) Cleanup work after the end of a shift, including verifying or correcting information entered in company systems; (3) Performing work during meal periods; and (4) Performing work before or after scheduled hours.

*Defendants' Practice of Rounding Clocked Time*

68. While working for Defendants during the relevant time period, Plaintiffs would regularly arrive for work and begin working before the start time of their scheduled shift.

69. Plaintiffs regularly performed work for Defendants during their unpaid meal periods.

70. Plaintiffs regularly performed work after the end time of their scheduled shifts, including but not limited to finishing calls in which they were involved at the end of their scheduled shift.

71.    Defendants utilize certain software developed by VMWare that captures and records the precise time of day and date that Plaintiffs would log out from their assigned computer terminal at the end of their workday; and Defendants have retained a copy of such recording for each Plaintiffs.

72.    Defendants have had other records of the actual time when Plaintiffs and their coworkers actually finished calls in which they were involved at the time of and after the end of their scheduled shift time, but Defendants did not use those records for calculating Plaintiffs' and their coworkers' compensation. Instead, Defendants rounded the time from the actual time worked to the scheduled shift time, and the scheduled shift times—not the actual times—were then used to calculate and process payroll for Plaintiffs.

73.    Plaintiffs were regularly not paid for all time worked, including for work performed prior to the start time of their scheduled shift, work performed during meal periods, and work performed after the end time of their scheduled shift.

74.    Plaintiffs estimate that they each often worked approximately a minimum of one or more hours per work week of unpaid overtime. Evidence in the form of records indicating some of the time that Plaintiffs have worked is in the exclusive possession and control of Defendants, including but not limited to the unscheduled events in the IEX schedules, otherwise referred to as IEX raw data, reflecting contemporaneously imported log data from the live phone software for each Plaintiff after the end of their scheduled shift time that was never used as Trade Time or paid as incidental overtime.

75.    Defendants' practice of rounding and failing to pay for time worked pre-shift and post-shift and instead rounding the time for which it would compensate Plaintiffs to their

scheduled shift time is wide-spread and has occurred for a significant period of time during the last relevant limitations period.

76.     All post-shift scheduled events that are recorded in Plaintiffs' IEX icon-based schedules are converted into computer code compatible with AT&T's central payroll processing software, called eLink, for the purpose of generating nationwide batched payroll, by an intermediary computer program called TVI.

77.     The TVI program automatically rounds all unscheduled IEX events that fall outside of Plaintiffs' scheduled shift hours to zero for purposes of payroll processing and batching.

78.     The actual time worked by Plaintiffs after their scheduled shift times can be determined from the log-in/-out records/data themselves, which are required to be kept by Defendants pursuant to 29 U.S.C. §211(c), 29 C.F.R. § 516, and the FLSA generally.

79.     At various times and in various locations across the country, AT&T has directed Force Team members and/or other corporate employees, to record the last logout from the last unscheduled event recorded in call center associate IEX schedules to calculate the employees' pay, regardless of whether those logouts fell outside of scheduled shift hours, and without enforcing the self-reporting timekeeping requirement for those call center associates.

## COUNT I: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA

80.     Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs as if fully set forth in this Count.

81.     Plaintiffs bring this count pursuant to 29 U.S.C. § 216(b) to recover unpaid wages, liquidated damages, attorneys' fees and costs, and other damages owed.

82.    Plaintiffs are or were hourly-paid, non-exempt, full-time employees whom Defendants employed at call centers in the states of Arkansas, Kansas, Missouri, Oklahoma and Texas, where their primary job duty was receiving inbound customer calls, across all departments and divisions of Defendants, during the relevant time period and whose daily post-shift log-out times from CTI, in workweeks where Plaintiffs were paid for at least 40 hours of work time, were rounded to zero Trade Time and unpaid as incidental overtime at the end of the pay period, but expressly carves out all individual plaintiffs in each of the *Mosley v. AT&T* progeny lawsuits currently pending in the District Courts of the Western and Northern Districts of Texas.

83.    Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs of overtime compensation and thereby increase Defendants' earnings and ultimately Defendants' profits.

84.    Section 207(a)(1) of the FLSA requires that an employee must be paid overtime equal to at least one-and-one-half times the employee's regular rate of pay for all hours worked in excess of 40 hours per week.

85.    Plaintiffs were not paid for all hours worked in excess of 40 in a week, in violation of the FLSA.

86.    Plaintiffs also were not paid a *bona fide* regular rate of pay for straight time hours worked when those hours were not tracked and accounted for, but were worked by these individuals.

87.    While working for Defendants, Plaintiffs were subject to the control of Defendants and engaged in activities that were undertaken not for Plaintiffs own convenience, but that were necessary for the performance of their duties for Defendants and that were integral

and indispensable to their principal activities. Despite this, Plaintiffs were regularly permitted or required to work "off the clock" as set forth herein, time for which they are entitled to be compensated.

88.     Defendants required and/or permitted Plaintiffs to work off the clock by remaining on duty on the premises or at a prescribed work site and engage in work related activities after they were logged-out and "off the clock," in the interest of the employer.

89.     Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay overtime wages for all overtime work performed by Plaintiffs.

90.     Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c) and in 29 C.F.R. § 516.2(7)-(9).

91.     At all times relevant hereto, the action of Defendants to not pay overtime pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required overtime pay for overtime work and required them to maintain true and accurate records. Defendants received complaints from Plaintiffs regarding their failure to properly compensate them for all hours worked but failed to redress these concerns, necessitating this lawsuit.

92.     Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice described above to the detriment of Plaintiffs.

93.     As a direct and proximate result thereof, Plaintiffs are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

94.     Plaintiffs request that the Court award the unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

## **RELIEF SOUGHT**

**COLLECTIVE ACTION COMPLAINT**                                                                    **- 18 -**

WHEREFORE, Plaintiffs pray for an Order of judgment against Defendants, jointly and severally, as follows:

A.      Finding Defendants liable for unpaid wages due to Plaintiffs (and those who may join in this action) and for liquidated damages in an amount equal to the unpaid wages found due to Plaintiffs (and those who may join the suit);

B.      For an Order awarding Plaintiffs (and those who may join in this action) the costs of this action;

C.      For an Order awarding Plaintiffs (and those who may join in this action) attorneys' fees;

D.      For and Order awarding Plaintiffs (and those who may join in this action) pre-judgment and post-judgment interest at the highest rates allowed by law; and

E.      Ordering equitable relief in the form of a permanent injunction, requiring Defendants to record and report, for Trade Time and pay purposes, all time recorded in the unscheduled IEX events of all call center associates whose primary job duty is receiving inbound customer calls, that represent post-shift activity in CTI without any requirement that the employee first make an independent request for such time to be recorded as Trade Time and/or incidental overtime first, and to pay all unused trade time as incidental overtime at the end of each pay period without first requiring the employee to make a second request for that previously reported Trade Time to be paid as incidental overtime.

F.      For an Order granting such other and further relief as may be necessary and appropriate.

**COUNT II: VIOLATION OF THE LABOR-MANAGEMENT RELATIONS ACT**

95.     Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs 1-87 as if fully set forth in this Count.

96.     This Count arises from Defendants' failure to pay Plaintiffs for all their earned wages at the rates and in the manner that Defendants agreed, under the provisions of the collective bargaining agreement between the parties.

97.     Plaintiffs have been employees of Defendants whom Defendants offered to and agreed to pay, and are due, but who have not been paid their wages earned for all time worked by them.

98.     Plaintiffs bring this Count II to recover from Defendants unpaid wages and overtime compensation.

99.     During the course of their employment with Defendants, Plaintiffs had an agreement with Defendants within the meaning of federal labor law, including but not limited to the Taft-Hartley Act and the Labor Management Relations Act, to be compensated for all hours worked, at the rates to which the parties agreed, which Defendants offered to pay and which Plaintiffs accepted.  A copy of the Collective Bargaining Agreement ("CBA") is attached as Exhibit 1.

100.    The class of plaintiffs that Plaintiff Harrington seeks to represent pursuant to F.R.C.P. Rule 23, for the violation of Article IV, Section 4 is defined as follows:

    All employees of Defendants who were members of the CWA union where their primary job duty was receiving inbound customer calls, across all departments and divisions of Defendants, during the relevant time period and whose daily post-shift log-out times from CTI, in workweeks where Plaintiffs were paid for less than 40 hours of work time, were

rounded to zero Trade Time and unpaid as incidental overtime at the end of the pay period.

101.     Specifically, Defendants agreed to pay Plaintiffs at overtime rates, e.g., 1 1/2 times their regular hourly rate, for each minute worked in excess of eight hours in each work day, that was not used as Trade Time, regardless of whether Plaintiffs worked forty or more hours in that work week.

102.     In one or more individual work weeks, Defendants did not pay each of the Plaintiffs for all time worked, or fraction thereof, at the rates to which the parties agreed, including at overtime rates, for minutes worked in excess of eight hours in weeks where the Plaintiffs were paid for less than 40 hours of work time.

103.     Plaintiffs were entitled to be compensated for all time worked as agreed between Plaintiffs and Defendants.

104.     This Count II is brought pursuant to F.R.C.P. 23(a) and 23(b) because the class of plaintiffs is so numerous that joinder of all class members is impractical.

105.     The class representative and the putative class members have been equally affected by Defendants' failure to pay the daily overtime wages.

106.     Furthermore, those putative class members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

107.     The issues involved in this Count II present common questions of law and fact, specifically:

i.      Whether Defendants employees were required and/or permitted to remain on the work premises and work beyond the end time of their scheduled shift times in order to perform compensable work; and

ii.     Whether the putative class members were unpaid for the post-shift work;

iii.    Whether that unpaid post-shift work occurred during any day in workweeks where the employees were paid for less than 40 hours of work time.

108.    The common question of law and fact predominate over the variations which may exist between members of the putative class, if any.

109.    The class representative, the putative class members, and Defendants have a commonality of interest in the subjection matter and remedy sought.

110.    The class representative is able to fairly and adequately represent and protect the interests of the putative class.  If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to class members, to the Court, and to the Defendants.

111.    Class counsel is sufficiently experienced in Rule 23 class action practice, and in handling claims for unpaid daily overtime such as those advanced by this Count II, to fairly and adequately represent the Plaintiff and the putative class of similarly situated employees.

112.    Accordingly, a class action is an appropriate method for the full and fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

113.    Plaintiffs have exhausted any grievance procedures and contractual remedies provided by the CBA, by attempting to initiate their grievance to the Company, through their organized bargaining agent, the Communications Workers of America, to no avail, because the Union signatory to the CBA has failed to proceed with the grievance and has failed to notify the Plaintiff of what, if anything, the Union intend to do with the grievance. The Union has breached its duty of fair representation to Plaintiffs, and

Defendants have failed to respond to or proceed with the grievance independent of the Union.

114.   On July 10, 2020, Plaintiff both hand-delivered and sent by email a copy of his grievance to both Jason Pastrano and Eric Stanten, Defendants' representatives, at the AT&T call center located at 4119 Broadway Street, San Antonio, Texas. See, Exhibit 2.

115.   Plaintiff also Hand Delivered his grievance to Manager Kischchen Hazelton; and provided copies to clerks, as well as to the Director and Associate Director of the call center, with his request to forward the grievance to Labor Relations and the Union Steward.

116.   Neither Mr. Pastrano, nor Mr. Stanten, nor any representative of the Communications Workers of America ("CWA"), nor any representative of either Defendant have processed the grievance, or communicated with Plaintiff about his grievance in any way.

117.   Plaintiff Harrington has attempted to contact representatives of CWA after the submission of his grievance, but has not received any response, either by phone, mail, email or otherwise.

118.   The CWA Union has breached its duty of fair representation of Plaintiffs, by failing to take any action whatsoever to proceed with Plaintiffs' grievance.  Specifically, the Union has failed to: (i) acknowledge the grievance; (ii) enter an appearance for Plaintiffs in the grievance proceedings; (iii) communicate with the Plaintiffs regarding the facts and merits of the grievance; (iv) investigate the grievance; (v) appeal the inaction of the employer in the grievance proceedings; (vi) demand a hearing date; (vii) schedule the grievance for hearing; and (viii) reach an agreement with the employer on any mutually

satisfactory and proper method of presentation, discussion, and disposition of the grievance.

119.    Plaintiff, and the class of similarly situated employees he seeks to represent, have exhausted their contractual procedures under the Article XIX, Section 11, because no other procedure is required under Section 11 other than the delivery of the complaint not being delivered by the Union.  Plaintiffs have no other avenue or procedure to perform in order to advance their claims and attempts by Plaintiffs, or their representatives, to advance and/or inquire as to the status of the claims have been rebuffed and/or ignored.

120.    Plaintiff, and the class of similarly situated employees he seeks to represent, are exempt from the exhaustion requirement of Section 301 because the Union wrongfully refuses to process the grievance and has violated its duty of fair representation.

121.    Plaintiff, and the class of similarly situated employees he seeks to represent, are exempt from the exhaustion requirement of Section 301 because the conduct of Defendants, and specifically: (i) the failure to acknowledge the grievance; (ii) the failure to process the grievance; (iii) the failure to advance the grievance; (iv) the failure to schedule a hearing; (v) the failure to dispose of the grievance; and (vi) the failure to reach an agreement with the Union on any mutually satisfactory and proper method of presentation, discussion, and disposition of the grievance, amounts to a repudiation of the remedial procedures specified in the contract.

122.    Plaintiff, and the class of similarly situated employees he seeks to represent, are exempt from the exhaustion requirement of Section 301 because exhaustion of contractual remedies would be futile because they would have to submit their claims to a group comprised entirely of representatives chosen by the Defendants and the Union, against

whom their claims of unpaid daily overtime and violation of the duty of fair representation is made.

123. Plaintiff Harrington presented a written grievance to the Communications of America over Defendants' failure to compensate he and others similarly situated as described in this Count II.

124. At all times relevant, each of the Defendants have been an "employer" of each of the Plaintiffs, as that term is defined by the parties' Collective Bargaining Agreement.

125. At all times relevant, each of the Plaintiffs have been an "employee" of each of the Defendants, as that term is defined by the parties' Collective Bargaining Agreement.

126. At all times relevant, and at Defendants' request, Plaintiffs performed work for Defendants before and after their scheduled shift, as well as during all and/or part of their unpaid meal breaks.

127. At all times relevant hereto, Defendants were aware that Plaintiffs performed work and work-related tasks before and after their scheduled shift, on a routine basis.

128. The task of performing work and work-related tasks before and after their scheduled shift is an essential component of Defendants' business operations at Defendants' call centers.

129. Defendants at all times considered the tasks performed by Plaintiffs, before and after their scheduled shifts, to be compensable work, had that same work been performed during their scheduled shift.

130. Defendants' Corporate Code of Conduct permits and/or requires their employees to perform work for Defendants before and after their scheduled shift, as well as during their meal breaks, and requires that such time be paid.

131.   Defendants' managers and/or supervisors often observed Plaintiffs performing work and work-related tasks for Defendants before and after their scheduled shift and during their meal breaks, and often assisted them in performing that work.

132.   Under Defendants' policy and practice, Defendants at times required Plaintiffs to be present for work before and after their scheduled shift, on a daily basis.

133.   Defendants' business records reflected data, so that Defendants' managers could see and know that non-exempt employees, including Plaintiffs, routinely performed work for Defendants before and after their scheduled shifts and during their meal breaks.

134.   Defendants did not instruct Plaintiffs to not perform work for Defendants before and after their scheduled shift, or during their meal breaks.

135.   By knowing of, permitting, and/or requiring Plaintiffs to perform services for Defendants before their scheduled shifts, Defendants assented to Plaintiffs performing services before the start time of their scheduled shifts.

136.   Defendants assented to pay Plaintiffs at an agreed-upon hourly rate for all work Defendants permitted and/or required, including at 1.5 times their regular hourly rate for all time beyond 8 hours worked in a single work day.

137.   Defendants assented to Plaintiffs' performing services before, during and after their scheduled shifts, including during meal breaks, by, among other means, Defendants' knowledge and awareness of those duties being performed at those times, Defendant's policy and practice of permitting and/or requiring Plaintiffs to perform duties before and after their shifts and during their meal breaks, and before and after they had clocked in or out, by the lack of any instruction or meaningful effort by Defendants to forbid or not allow Plaintiffs to perform duties before or after their scheduled shifts, and through their

Code of Business Conduct and other directives distributed at and after an employee's orientation period that informed Plaintiffs and Defendants' other employees that they must perform work duties before and after their scheduled shifts.

138.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered lost wages and other damages and will continue to suffer other damages.

139.  Plaintiffs have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiffs pray for an Order of judgment against Defendants, jointly and severally, as follows:

A.  Awarding compensatory damages and consequential damages, including all pay owed, in an amount according to proof;

B.  Awarding all costs and reasonable attorneys' fees incurred in prosecuting this claim;

C.  Awarding pre-judgment and post-judgment interest, if permitted; and

D.  Ordering equitable relief in the form of a permanent injunction, requiring Defendants to record and report, for Trade Time and pay purposes, all time recorded in its employees' unscheduled IEX events that represent post-shift activity in CTI without any requirement that the employee first make an independent request for such time to be recorded as Trade Time and/or incidental overtime first, and to pay all unused trade time as incidental overtime at the end of each pay period without first requiring the employee to make a second request for that previously reported Trade Time to be paid as incidental overtime.

E.  Ordering such further relief as the Court deems just and equitable.

**COLLECTIVE ACTION COMPLAINT**

JURY DEMANDED ON THIS AND ALL COUNTS

Respectfully submitted,

*/s/ Glen J. Dunn, Jr.*

**GLEN J. DUNN, JR.**
**GLEN J. DUNN & ASSOCIATES, LTD.**
221 North LaSalle Street
Suite 1414
Chicago, Illinois 60601
312.546.5056 fax
312.880-1010 phone
GDunn@GJDlaw.com

**JEFFREY G. BROWN**
**JEFFREY GRANT BROWN, P.C.**
65 West Jackson Blvd.
Suite 107
Chicago, IL 60604
312.789.9702 fax
jeff@JGBrownlaw.com

**J. DEREK BRAZIEL**
**BRAZIEL DIXON, LLP**
Texas Bar No. 00793380
1910 Pacific Ave., Suite 12000
Dallas, Texas 75201
214 749.1400 phone
214 749.1010 fax
jdbraziel@l-b-law.com

**ATTORNEYS FOR PLAINTIFFS**