## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **CEDRIC HARRINGTON, individually and on behalf of all others similarly situated,** | |
| ***Plaintiff*,** | |
| **v.** | **Case No. 5:21-CV-00012-JKP-RBF** |
| **SOUTHWESTERN BELL TELEPHONE L.P., a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC, a/k/a AT&T SOUTHWEST; and AT&T SERVICES, INC.,** | |
| ***Defendants*.** | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Southwestern Bell Telephone L.P. ("Southwestern Bell") and AT&T Services, Inc. ("AT&T") (together, "Defendants") submit this Motion to Dismiss the above-captioned matter and respectfully show the Court as follows:

### SUMMARY

This lawsuit is an improper attempt to circumvent this Court's rulings and to avoid their consequences. On July 2, 2020, Plaintiff, along with eight additional individual plaintiffs (collectively, the "*Harrington #1* Plaintiffs"), filed suit in this same Court against the same defendants based on the same alleged failure to pay call center workers for all of their hours worked. *See Harrington et al v. Southwestern Bell Telephone L.P. et al*, No. 5:20-cv-00770-JKP-RBF (W.D. Tex. filed July 2, 2020), Dkt. No. 1 ("*Harrington #1*"). Not only does *Harrington #1*

allege the same Fair Labor Standards Act ("FLSA") cause of action that Plaintiff asserts here, the *Harrington #1* Plaintiffs attempted to bring the same Labor Management Relations Act ("LMRA") claim advanced in this case. But the Court struck plaintiffs' additional claim in *Harrington #1*, explaining that the heightened good cause standard would apply to future amendment attempts. Dkt No. 27. This action attempts to evade that result as well as the Court's Scheduling Order and, as such, violates both the rule against claim splitting and Fifth Circuit authority prohibiting such gamesmanship. Moreover, even if otherwise permitted—and it is not—Plaintiff's new parallel filing would be futile. Plaintiff does not have standing to assert an FLSA action on behalf of a class in which he is not a member, and his LMRA claim is still jurisdictionally barred because he did not exhaust mandatory grievance and arbitration procedures and he does not fit within any exhaustion exception. The Court should dismiss this lawsuit with prejudice.

## BACKGROUND

Plaintiff Cedric Harrington is a former opt-in plaintiff in a decertified FLSA collective action previously filed in the United States District Court for the Northern District of Texas ("*Mosley-Lovings*").[1] Harrington is also a plaintiff in the pending *Harrington #1* lawsuit.

### Harrington # 1

On July 2, 2020, Harrington and several other former *Mosley-Lovings* opt-ins filed suit in this Court against the same defendants based on the same alleged failure to pay call center workers for all of their hours worked. *Harrington #1*, Dkt. No. 1. *Harrington #1* was originally filed under the FLSA but, on October 30, 2020, the *Harrington #1* Plaintiffs moved for leave to file an

---

[1] *Mosley-Lovings v. AT&T Corp.*, No. 3:18-cv-01145-B (N.D. Tex.), decertified on Apr. 6, 2020 (Dkt. No. 178). The Court may take judicial notice of Plaintiff's other lawsuits and other publicly available documents in related cases without converting this motion into a motion for summary judgment. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

amended complaint, seeking to add a claim for breach of contract based on the Collective Bargaining Agreement ("CBA") between Defendants and the Communications Workers of America (the "Union"). *Harrington #1*, Dkt. No. 20 (now stricken) ("Motion for Leave"). Defendants' Response to the Motion for Leave argued that amendment would be futile because the *Harrington #1* Plaintiffs had not exhausted the CBA's grievance and arbitration procedures and did not fit within any exception to that jurisdictional exhaustion requirement. *Harrington #1*, Dkt. No. 23 ("Response"). The *Harrington #1* Plaintiffs' Reply did not substantively respond to Defendants' arguments, but, rather, argued that leave to amend should be granted as a matter of right. *Harrington #1*, Dkt. No. 24 ("Reply").

On December 2, 2020, the Court held a hearing on the *Harrington #1* Plaintiffs' Motion for Leave. Dkt. No. 25. Plaintiffs did not appear at this hearing. At the hearing, the Honorable Magistrate Judge Richard B. Farrer explained that he intended to strike the Motion for Leave as a sanction for the *Harrington #1* Plaintiffs' failure to appear at the hearing, and that any subsequent attempt to amend would be governed by the more-stringent "good cause" standard under Federal Rule of Civil Procedure 16 ("Rule 16"). *Harrington #1*, Dkt. No. 29, pgs. 4-5; *see* FED. R. CIV. PRO. 16(b)(4). The Court subsequently issued an Order striking the Motion for Leave as a sanction for failure to comply with a Court order and failure to appear at a scheduled hearing. *Harrington #1*, Dkt. No. 27, pgs. 1, 3 (the "Order"). Alternatively, the Court found that the Motion for Leave should be denied "because the proposed amendment was futile, for the reasons discussed at the hearing and addressed in Defendants' Response." *Id.* at pg. 3. The Order reiterated that, should the *Harrington #1* Plaintiffs again seek leave to amend, such future motions would be governed by Rule 16, and "would need to explain—with supporting authority—how [Plaintiffs'] actions are consistent with good cause for failing to amend within the Scheduling Order deadline." *Id.*

On December 9, 2020, in accordance with the Court's Order and Rule 16, Defendants filed a Motion for Attorneys' Fees. Dkt. No. 31. In response to that Motion, Plaintiffs acknowledged that their avenue for bringing any future LMRA claim was through amendment in *Harrington #1*, even arguing that subjecting Plaintiff to a heightened standard for amendment was an appropriate sanction and representing to the Court that "Plaintiffs intend to seek amendment of the complaint to include Mr. Harrington's section 301 claims." Dkt. No. 38-1 pg. 7 & 8.

**Harrington #2**

Instead of seeking leave to amend *Harrington #1*, on January 7, 2021, *after* the Scheduling Order deadline for amending pleadings in *Harrington #1*, Harrington filed this action ("*Harrington #2*"). Dkt. No. 1. *Harrington #2* is based on the same factual premise as *Harrington #1*: defendants alleged failure to pay non-exempt call center workers for all of their time worked. *Id.* It is brought by the same attorneys on behalf of one of the same plaintiffs against the same defendants and asserts a virtually identical FLSA claim (although brought as a collective action).[2] *Id.* In addition to this FLSA claim, *Harrington #2* reasserts the LMRA cause of action that the Court previously struck in *Harrington #1*. *Id.* This LMRA claim is asserted as a Rule 23 class action that arguably would include the other *Harrington #1* plaintiffs. *Id.* Notably, despite the close relationship of *Harrington #1* and *Harrington #2* and despite the obligation to do so, Plaintiff did not designate

---

[2] By bringing this claim as a collective action, Plaintiff contradicts representations his attorneys made to another federal court about his intention to proceed individually. Plaintiff was an opt-in plaintiff in the *Mosley-Lovings* conditionally certified collective action. *Mosley-Lovings*, Dkt. No. 1-3. After Defendants moved for decertification, the *Mosley-Lovings* plaintiffs acquiesced and represented to the court that they "intend[ed] to pursue each of their claims for weekly and daily unpaid overtime in individual actions, or in small groups of less than ten employees, if and where appropriate to serve the interests of judicial economy." *Mosley-Lovings*, Dkt. No. 133 at 4. They specifically asked that the opt-in plaintiffs be dismissed without prejudice "to refile their individual claims." *Id.* Quoting plaintiffs' representation, on April 6, 2020, the *Mosley-Lovings* Court issued an order decertifying that class and dismissing the opt-in plaintiffs "without prejudice to refile their own claims." *Mosley-Lovings*, Dkt. No. 178.

---

*Harrington #1* as a related lawsuit.  *See* W.D. TEX. LOCAL RULE CV-3(a) ("All parties are <u>required</u> to advise the court of any related cases, through means of the Civil Cover Sheet or otherwise.") (emphasis added); *see also* Section VIII of AO Form JS 44, Civil Cover Sheet.  Therefore, on January 11, 2021, Defendants notified the Court that Plaintiff had filed an action related to *Harrington #1*. *Harrington #1*, Dkt. No. 42.

## ARGUMENT & AUTHORITIES

### I.      Plaintiff's Duplicative Action Should Be Dismissed.

This lawsuit was brought by Cedric Harrington one of the plaintiffs in *Harrington #1* against the same defendants as *Harrington #1* and relies on the same factual background as *Harrington #1*. Dkt. No. 1. In fact, this lawsuit asserts a failure to pay overtime under the FLSA, just as *Harrington #1*, as well as the LMRA claim that the Court struck in *Harrington #1*. *Id.* This second-bite-at-the-apple lawsuit should be dismissed both because it violates the rule against claim splitting and because it impermissibly attempts to circumvent the Court's December 2, 2020 Order, Dkt. No. 27, and the Court's Scheduling Order, Dkt. No. 16, in *Harrington #1*.

### A.      This Action Should Be Dismissed Because Plaintiff Has Violated the Rule Against Claim Splitting.

"[T]he rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Ameritox, Ltd. v. Aegis Scis. Corp.*, No. CIV.A.3:08-CV-1168-D, 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009)(quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008)); *see also Saldivar v. Austin Indep. Sch. Dist.*, No. A-15-CA-00847, 2016 WL 7410744, at *2 (W.D. Tex. Dec. 20, 2016). Claims splitting exists if "the two actions were based on the same nucleus of operative facts." *Saldivar*, 2016 WL 7410744, at *2 (quoting *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992)). This inquiry requires courts to look at "the factual predicate of the

claims asserted, not the legal theories upon which the plaintiff relies." *Id.* And if the second suit "involves the same parties and arises out of the same transaction or series of transactions as the first claim," the second suit will be barred. *Ameritox*, 2009 WL 305874, at *4 (quoting *Sensormatic Sec. Corp.*, 273 F. App'x at 26).

Here, there is no doubt that *Harrington #1* and *Harrington #2* involve the same nucleus of operative facts—the core factual allegation in both cases is that plaintiffs were not paid for all of their hours worked. Both actions allege that non-exempt call center employees are required to perform uncompensated work before and after their scheduled shifts and that time is tracked but uncompensated by Defendants. *Compare Harrington #2*, Dkt. No. 1 ¶¶35-43 *with Harrington #1*, Dkt. No. 1, ¶¶33-42. Similarly, both actions allege that non-exempt call center employees performed work during their breaks and meal periods. *Compare Harrington #2*, Dkt. No. 1 ¶44 *with Harrington #1*, Dkt. No. 1, ¶43. Thus, although the *Harrington #2* Complaint adds additional details about Defendants' alleged policies for reconciling differences between an employee's self-reported overtime and the amount of work time reflected in Defendants' scheduling software, the underlying allegations—that certain call center employees were not properly paid—are the very same as those alleged in *Harrington #1*. Similarly, although *Harrington #2* adds a claim under Section 301 of the LMRA (the same claim that the *Harrington #1* plaintiffs previously sought unsuccessfully to add to that case), this claim is again predicated on factual allegations regarding the alleged failure to pay call center employees for all time worked.[3] Dkt. No. 1 Count II.

---

[3] Plaintiff's proposed amendment in *Harrington* #1 asserted this cause of action as one for breach of contract. *Harrington* #1, Dkt. No. 20-1 Count II (now stricken). However, it is substantively the same as the LMRA claim in *Harrington* #2. *See Salvatierra v. AT&T Servs. Inc.*, No. 3:19-CV-02624-X, 2020 WL 5702273, at *5 (N.D. Tex. Sept. 24, 2020)(treating the plaintiffs' breach of contract cause of action as a claim under the LMRA in another *Mosley-Lovings* progeny case involving the same lawyers, the same allegations and the same defendants as here). No matter what, the claim-splitting inquiry looks at "the factual predicate of the claims asserted, not the legal

Indeed, the only real difference between the *Harrington #2* Complaint and the original complaint and proposed amendment in *Harrington #1* is that, this time, Plaintiff attempts to expand his legal theories by asserting the FLSA claim as a collective action and the LMRA claim as a Rule 23 class action. This difference is without consequence, however, as the test for whether Plaintiff has improperly split his claims is whether the claims arise out of the same nucleus of operative facts, not whether Plaintiff has asserted the exact same legal theories or requests for relief. *Saldivar*, 2016 WL 7410744, at *2 (quoting *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992)). Plaintiff has violated the rule against claim splitting, and his claims should be dismissed.

**B.     This action impermissibly attempts to circumvent the Court's *Harrington #1* Orders and the procedural rules.**

In addition to straight application of the claim-splitting doctrine, this case should be dismissed because it is an impermissible attempt to evade the Court's December 2, 2020 Order and the Court's Scheduling Order. *Harrington #1*, Dkt. Nos. 16 & 27. The Fifth Circuit has explained that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant[s]." *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985). Therefore, "[w]hen a plaintiff files a second complaint alleging the same cause of action as a prior, *pending*, related action, the second complaint may be dismissed." *Id* (emphasis in original); *see also Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996).[4] Of particular significance to this case, the Fifth Circuit

---

theories upon which the plaintiff relies." *Saldivar*, 2016 WL 7410744, at *2 (quoting *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992)).

[4] Courts often cite *Oliney* and *Friends of Earth* in the claim-splitting context although neither case specifically references that doctrine. However, irrespective of whether these cases are viewed as claim-splitting cases or as standing for a separate doctrine, the result is the same: this case should be dismissed.

has confirmed that "[t]his rule finds particular application where, as here, the plaintiff files the second complaint to achieve procedural advantage by 'circumventing the rules pertaining to the amendment of complaints'" in the first lawsuit. *Friends of the Earth*, 95 F.3d at 362 (quoting *Oliney*, 771 F.2d at 859) (affirming dismissal of second complaint when plaintiff attempted to cure a jurisdictional defect by filing a duplicative lawsuit because amending the original complaint would be unavailing).

In *Oliney*, the defendants moved to dismiss Oliney's first lawsuit for lack of subject matter jurisdiction because, at the time he filed the action, complete diversity did not exist, and, although there was eventually complete diversity, a party's citizenship as of commencement of the action is controlling in determining diversity jurisdiction. 771 F.2d at 858. After the defendants moved to dismiss, but prior to dismissal, Oliney filed *another* complaint asserting the same allegations against the same defendants. *Id.*[5] The district court dismissed the second duplicative lawsuit, and a panel for the Fifth Circuit affirmed. *Id.* In reaching this decision, the Fifth Circuit explained, "the district court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints to expand the procedural rights he would otherwise enjoy—particularly for the purpose of circumventing the rules pertaining to amendment of complaints." *Id.* at 859 (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3rd Cir. 1977)). Thus, "the district court properly dismissed the second suit as duplicative of the first, which was still pending." *Id.*

Similarly, in *Saldivar v. Austin Independent School District*, a claim splitting case, the court in the plaintiff's original lawsuit denied her request to amend to add the very retaliation claim upon

---

[5] As here, Oliney's second suit failed to comply with a local rule requiring disclosure of any pending action involving the same parties and issues. *Id.* at 858-59. The purpose of this procedure is to ensure that "such action goes before the same judge who could then dismiss the second suit as duplicative." *Id.* at 859. In this case, although Plaintiff failed to comply with the requirement for noting related cases, Defendants learned of the case and it was assigned to the same judge.

which her second suit was based. 2016 WL 7410744, at *3. Noting that the "[t]he rule against claim splitting is often employed to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit," the court dismissed the second action with prejudice "to prevent this procedural end run around the Court's order" in the first case. *Id*. (internal quotes omitted); *see also Ameritox, Ltd.*, 2009 WL 305874, at *5 (dismissing with prejudice second lawsuit when it was "apparent" that plaintiff sought to circumvent another United States district court's order denying plaintiff's motion for leave to file an amended complaint).

Like the plaintiffs in *Oliney* and *Saldivar*, Plaintiff seeks to circumvent the Court's Order striking the amended complaint in *Harrington #1* and the Scheduling Order in *Harrington #1* by filing this action. Plaintiff had an opportunity to bring this and any other claim relating to the underlying allegations in *Harrington #1* when filing that case, but elected first not to do so and then, later, attempted to do so without fully briefing or appearing at the properly noticed hearing on his Motion for Leave or otherwise properly pursuing an amendment for "good cause." *See* Order, Dkt. No. 27, pg. 3. Instead, Plaintiff has simply disregarded the Court's rulings in *Harrington #1* and filed this new, duplicative action without even apprising the Court that the two cases were related, as is required by the Court's local rules. *See* W.D. TEX. LOCAL RULE CV-3(a) ("All parties are required to advise the court of any related cases, through means of the Civil Cover Sheet or otherwise.") (emphasis added); *see also* Section VIII of AO Form JS 44, Civil Cover Sheet. Plaintiff's lawsuit wrongfully attempts to seek a procedural advantage, and, consistent with the Fifth Circuit's decisions in *Oliney* and *Friends of the Earth*, should be dismissed.

II.     **The Court Lacks Jurisdiction over Plaintiff's Causes of Action.**

In addition to violating the rule against claim splitting and the prohibition on this type of procedural end-run around the Court's orders, even considering the substance of Plaintiff's asserted claims, they fail.

A.     **Harrington Lacks Standing to Represent the Putative Collective and the FLSA Claim Must Be Dismissed.**

The Complaint purports to assert an FLSA collective action on behalf of certain non-exempt call center employees of Defendants, but it expressly carves out of this putative class "all individual plaintiffs in each of the *Mosley v. AT&T* progeny lawsuits currently pending in the District Courts of the Western and Northern Districts of Texas." Dkt No. 1 ¶82. Harrington was one of the opt-in Plaintiffs in *Mosely-Lovings*, and through *Harrington #1*, he is one of the individual plaintiffs in a *Mosley-Lovings* progeny case currently pending in this Court. *Mosley-Lovings*, Dkt. No. 1-3; *Harrington #1*, Dkt. No. 1-1. In other words, Harrington is not part of the group he seeks to represent. Thus, he does not have standing to bring this collective action.

"Article III standing is a jurisdictional prerequisite." *Crenshaw-Logal v. City of Abilene, Tex.*, 436 F. App'x 306, 308 (5th Cir. 2011). "Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. If the plaintiff has no standing individually, no case or controversy arises." *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981), *superseded by statute on other grounds*, Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (1988). The standing requirement is no different in a collective action suit. *Lucas v. BMS Enters., Inc.*, No. 309-CV-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010).

It is axiomatic that, in Rule 23 class actions, the named plaintiff must be a part of the class he seeks to represent. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *James v. City of Dallas, Tex.*, 254 F.3d 551, 562 (5th Cir. 2001) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012). Similarly, "[t]he purposes of a Section 216(b) representative action . . . are undermined when non-class members are allowed to serve as representatives." *Trezvant v. Fid. Employer Servs. Corp.*, 434 F. Supp. 2d 40, 51-53 (D. Mass. 2006). "[U]nder § 216(b), the named plaintiff does not have the right to act in a role analogous to the private attorney general concept." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). Thus, courts routinely reject FLSA collective actions asserted by a named plaintiff who does not fall within the defined class. *See Trezvant*, 434 F. Supp. 2d at 51-53 (dismissing named plaintiff when the plaintiffs' "own definition of the class excluded [a named plaintiff] as a class member"); *see also Heuberger v. Smith*, No. 3:16-CV-386-JD-JEM, 2017 WL 3923271 (N.D. Ind. 2017) (denying collective action certification when named plaintiff was not a member of the class he wished to represent because he did not experience the same complained-of wage deductions as employees in the putative class); *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 731 (N.D. Ill. 2012) (denying collective action certification when the underlying complaint was based on certain employees not being paid on a salary basis but the named plaintiffs were paid on salary basis).

And, significantly, in addition to lacking standing to bring this action, Plaintiff has likewise failed to show that other members of this putative collective want to join this proceeding. *Flores-*

---

*Litman v. Flight Servs. & Sys., LLC*, No. 5-20-CV-00346-FB-RBF, 2020 WL 7011906, at *2 (W.D. Tex. Oct. 20, 2020) (Farrer, M.J.)(in denying plaintiff's motion for conditional certification, holding that "a plaintiff-movant's vague statements that others might be interested in joining, especially when coupled with the fact that nobody else has consented, doesn't sufficiently demonstrate that other aggrieved individuals desire to opt-in."). The importance of Plaintiff showing interest by other potential class members is particularly acute here, because Plaintiff's proposed class is comprised of individuals who have previously chosen not to assert these claims against Defendants. In *Mosley-Lovings*, notice was sent to Revenue Management Representatives at five of Defendants' current and recently closed call centers. *Mosley-Lovings*, Dkt. No. 45. In this lawsuit, it appears that Plaintiff seeks to represent the same group.  However, by excluding plaintiffs in the *Mosley-Lovings* progeny cases, the possible universe of class members is comprised only of individuals who either declined to join the *Mosley-Lovings* collective action or declined to bring an individual claim after decertification in that case.  Plaintiff has provided no indication that, despite previously declining to advance claims against Defendants, these individuals will now pursue them.

The Fifth Circuit recently confirmed that "potentially dispositive, threshold matters" should be addressed early in a collective action. *Swales v. KLLM Transp. Servs., L.L.C.*, No. 19-60847, 2021 WL 98229, at *7 (5th Cir. Jan. 12, 2021) ("When a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the 'similarly situated' analysis and is likely to send notice to employees who are not potential plaintiffs."). Here, Harrington is an individual plaintiff in a *Mosley-Lovings* progeny lawsuit that is pending before this Court, yet he defines his own putative class to explicitly exclude individual plaintiffs such as himself.  Moreover, there is no indication that any individual who could join this action wants to

do so.  Harrington lacks standing to assert this collective action and the Court lacks jurisdiction

over the FLSA claim, which must be dismissed. *See Crenshaw-Logal*, 436 F. App'x 306 at 308.

### B. The Court Lacks Jurisdiction over Plaintiff's LMRA Claim as Plaintiff has Neither Exhausted the CBA's Contractual Procedures for Redress nor Does He Fit Within an Exception.

For a court to have jurisdiction over Plaintiff's LMRA claim, Plaintiff must have exhausted

the contractual grievance and arbitration procedures in the applicable collective bargaining

agreement or fit within one of three narrow exceptions to this requirement. *Nat'l Football League*

*Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 226-28 (5th Cir. 2017); *Salvatierra v. AT&T*

*Servs. Inc.*, No. 3:19-CV-02624-X, 2020 WL 5702273, at \*2 (N.D. Tex. Sept. 24, 2020). "When

courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case," and

it must be dismissed pursuant to Rule 12(b)(1). *Nat'l Football League Players Ass'n v. Nat'l*

*Football League*, 874 F.3d at 225; FED. R. CIV. P. 12(b)(1).

Even putting aside this jurisdictional requirement, a proposed claim can only overcome a

motion to dismiss under Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); FED. R. CIV. P. 12(b)(6). This

plausibility standard means that, although plaintiffs are not required to plead detailed factual

allegations, they cannot prevail based on "naked assertion[s] devoid of 'further factual

enhancement'" or by merely asserting conclusory allegations. *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557); *De La Vega v. USAA Real Estate Co*., No. 5-19-CV-00568-OLG-RBF,

2019 WL 5847853, at \*4 (W.D. Tex. Nov. 7, 2019) (Farrer, M.J.) (granting Motion to Dismiss

because plaintiff's pleading was insufficient under *Iqbal* and *Twombly*). Rather, Plaintiff's

allegations must include sufficient factual allegations to raise a right to relief above the speculative

level. *Freilich v. Green Energy Res., Inc.*, 297 F.R.D. 277, 282 (W.D. Tex. 2014); *see also Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Harrington #1*, this Court found that, for the reasons advanced in Defendants' Response to the *Harrington #1* Plaintiffs' Motion for Leave and reiterated at the hearing on that motion, Plaintiffs were not entitled to relief on the merits of their LMRA claim. *Harrington #1*, Dkt. No. 27, pg. 3. Yet, in this action, Plaintiff has asserted another LMRA claim.  And, although Plaintiff's Complaint asserts more facts than those asserted in the *Harrington #1*, even considering these additional facts as true, Plaintiff still fails to show that he exhausted his exclusive remedies under the CBA or that he fits within any recognized exception. His latest LMRA claim must be dismissed.

> 1.    **The Dispute-Resolution Procedures Under the CBA is Plaintiff's exclusive remedy.**

The CBA upon which Plaintiff's claim relies provides the following process to address employee grievances:

> The Union shall be the exclusive representative of all the employees in the Bargaining Unit for the purposes of presenting to and discussing with the Company grievances of any and all such employees arising from such employment; subject always, however, to the provisions of this Agreement, the current Agreement of General Application between the Union and the Company and of any applicable law.

Dkt. No.1, Ex. 1-1, Section 1 of Article XIX pg. 89.[6]

In *Salvatierra v. AT&T Servs. Inc.*, No. 3:19-CV-02624-X (N.D. Tex. Sept. 24, 2020) ("*Salvatierra*"), two former *Mosley-Lovings* opt-in plaintiffs brought a lawsuit against the same

---

[6] Plaintiff relies on the CBA's provisions throughout the Complaint and has attached a copy of the CBA to the Complaint. The Court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" for purposes of a Motion under Rule 12(b)(1) and "both the facts stated in the complaint and the documents either attached to or incorporated in the complaint" in considering a Rule 12(b)(6) motion. *Salvatierra*, 2020 WL 5702273, at *2 (internal quotations omitted)(Rule 12(b)(1)) and *Morgan v. Swanson*, 659 F.3d 359, 366 (5th Cir. 2011)(Rule 12(b)(6)).

Defendants alleging (just as here) that Defendants failed to properly compensate them for overtime under the FLSA and that Defendants breached the same CBA between the same Union and the same defendants. *Salvatierra*, Dkt. No. 1, ¶¶ 86-109. In *Salvatierra*, the Honorable Judge Brantley Starr correctly dismissed the *Salvatierra* claim for lack of subject matter jurisdiction, holding that the CBA's dispute-resolution procedure was the plaintiffs' final and exclusive remedy. *Salvatierra v. AT&T Servs. Inc.*, No. 3:19-CV-02624-X, 2020 WL 5702273, at *3-4 (N.D. Tex. Sept. 24, 2020). The same CBA construed in *Salvatierra* covers Plaintiff and the putative class here, and, for the same reasons set forth in *Salvatierra*, to establish jurisdiction, Plaintiff must show that he exhausted these remedies or fits within a narrow exception.

### 2.    Plaintiff Has Not Shown Exhaustion.

Plaintiff does not contend that he used the grievance and arbitration procedures set forth in the CBA in this case. Instead, the Complaint generally concludes that the putative class "ha[s] exhausted any grievance procedures" by "*attempting* to initiate their grievance" . . . "to no avail." Dkt. No. 1, ¶113 (emphasis added). Specifically, Plaintiff alleges that, on July 10, 2020, he hand-delivered and emailed a copy of his grievance to Defendants' representatives at a certain call center and to other employees of Defendants (importantly, not to the Union). *Id.*, ¶114-15. Plaintiff inaccurately and confusingly concludes that he and the putative class have exhausted their contractual remedies because "no other procedure is required" under the CBA "other than the delivery of the complaint not being delivered by the Union." *Id.*, ¶119.

Attempting to initiate the grievance procedures—particularly in the flawed manner described in the Complaint—is not the same as exhausting them. In *Nat'l Football League Players Ass'n*, the Fifth Circuit held that the district court did not have jurisdiction over a football player's grievance because, quite simply, "[t]he parties contracted to have an arbitrator make a final decision," and, "[t]hat final decision had not yet been issued." 874 F.3d at 227-28. "As there was

no final decision, [the player] had not yet exhausted the contracted-for remedies" before filing suit in federal court, and the district court lacked jurisdiction over the case. *Id.* at 228.

Here, the CBA clearly outlines the procedures for filing and adjudication of alleged breaches of the CBA. *See* Dkt. No. 1-1, 2017 Labor Agreement, Art. XIX, pgs. 89-92. Significantly, the CBA's Grievance provisions confirm that it is the "Union," not an individual employee, that "shall be the exclusive representative" of covered employees "for purposes of presenting to and discussing with the Company grievances . . .." *Id.*, Art. XIX § 1, pg. 89. And, that section goes on to explain that the grievance process begins with the "Union representative" delivering this type of employee complaint to the Company's Vice President-Labor Relations "within forty-five (45) days of the action complained of." *Id.*, Art. XIX § 2, pg. 89-90.[7] Yet, Plaintiff's Complaint never alleges he even presented his "grievance" to the Union in the first place, much less that the Union then provided it to the Vice President-Labor Relations.  Moreover, because the "grievance" does not state when the complained of failure to adequately pay occurred, it is not clear whether the Union could have timely presented it even if it knew there was a grievance. Dkt. No. 1-2. Plaintiff's Complaint does not even allege his grievance satisfied "full completion of the 'Formal Grievance' procedure" as required by the CBA. Dkt. No. 1-1, Art. XIX § 3(b), pg. 90. And, there is no allegation that the grievance was arbitrated, which the CBA requires.  *Id.*, 2017 Agreement General Application Art. IV, § 1 pgs. 197-200 ("[A]fter all steps in the 'Formal Grievance' procedure . . . have been undertaken and completed," either the Union or the Company may submit the dispute to arbitration for "final decision" in accordance with the procedures set forth therein).

---

[7] Because Plaintiff's "grievance" purports to raise complaints on behalf of multiple call centers, Dkt. No. 1-2, the CBA's applicable procedure would have been for the Union to present the grievance to the Vice President-Labor Relations.

Plaintiff's claim that he "attempted" to initiate a grievance in a manner clearly inconsistent with the terms of the CBA he seeks to invoke is insufficient, and his claim should be dismissed.

### 3.     Plaintiff Does Not Fit Within an Exception to Exhaustion.

In addition to concluding, without factual support, that he exhausted the CBA's grievance procedures, Plaintiff argues that he was excused from exhaustion because he fits within one of three narrow exceptions to this requirement.   In the Fifth Circuit, the only exceptions to the exhaustion requirement are:

> (1) the union wrongfully refuses to process the employee's grievance, thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; or (3) exhaustion of contractual remedies would be futile because the aggrieved employee would have to submit his claim to a group which is in large part chosen by the employer and union against whom his real complaint is made.

*Nat'l Football League Players Ass'n*, 874 F.3d at 228 (quoting *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978)).

### a.     Plaintiff's Complaint Does Not Show the Union Violated Its Duty of Fair Representation.

For the first exception, the duty of fair representation is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990). Even conduct that might be viewed as negligent, having bad judgment, or otherwise imperfectly carrying out its representative role does not make a union's conduct a breach of the duty of fair representation. *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). Vague and conclusory allegations or simply restating the legal elements of a claim do not carry a plaintiff's burden. *Moore v. Potter*, 275 F. App'x 405, 409 (5th Cir. 2008) (affirming dismissal because pleading failed to state a claim that the union's actions were arbitrary, discriminatory, or in bad faith).

Plaintiff attempts to expand on his allegations in *Harrington #1*'s proposed amendment, but even these additional allegations are insufficient to plausibly establish any failure of the duty of fair representation by the Union. For example, Plaintiff alleges that the Union has breached its duty of fair representation by "failing to take any action" regarding Plaintiff's grievance, and lists a series of actions the Union has allegedly "failed" to take. Dkt. No. 1., ¶¶118, 120. But, as noted previously, Plaintiff has never alleged that the Union even *had* his grievance.  And, even if it did, Plaintiff does not explain how the Union's alleged conduct was arbitrary, discriminatory, or in bad faith. *See Rawson*, 495 U.S. at 372. The "grievance" attached to the Complaint merely claims, "I have not been properly compensated for all my time worked outside my scheduled tours." Dkt. No. 1-2. It provides no details as to the time period or circumstances supporting this conclusion. *Id.* In fact, it does not even ask that this complaint be submitted through the grievance procedure but, rather, requests that his situation and those of other covered call center employees be "investigated." *Id.* There are any number of legitimate reasons for Union inaction based on the uncertainty of whether they even received the "grievance," its lack of detail and its requested relief. Yet the Complaint offers nothing to exclude any of those legitimate considerations. Plaintiff's legal conclusion (that a breach of the Union's duty occurred) and list of alleged non-actions are insufficient to show that the Union acted in an arbitrary, discriminatory, or bad faith manner.

"A union retains considerable discretion . . . in processing the grievances of its members," and an employee has no absolute right to have his grievance taken to arbitration or any other level of the grievance process. *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). Indeed, a union's obligation to prosecute a grievance is obviated if it decides "in good faith that the grievance lacked merit or for some other reason should not be pursued." *Id.* At most, Plaintiff has alleged that, by failing to act, the Union acted negligently, which is insufficient. *United*

*Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation."); *see also Young v. United States*, No. CV SA-14-CA-113-OLG, 2014 WL 11640986, at *9 (W.D. Tex. June 30, 2014) (recommending dismissal of claim for breach of the duty of fair representation when the facts alleged in plaintiff's complaint, taken as true, established an inference of no more than simple negligence), *report and recommendation adopted sub nom. Young v. U.S. Postal Serv.*, No. SA-14-CA-113-OG, 2014 WL 11640987 (W.D. Tex. Sept. 11, 2014).

Plaintiff has failed to carry his burden of showing that the Union's conduct was arbitrary, discriminatory, or in bad faith.  *See Moore v. United States Postal Serv.*, No. CV H-06-1611, 2007 WL 9747640, at *3 (S.D. Tex. July 30, 2007), *aff'd sub nom. Moore v. Potter*, 275 F. App'x 405 (5th Cir. 2008)(plaintiff's reference to only a few factual alleged "improprieties" in the grievance handling process did not meet his burden and the claim was dismissed).

### b.      Plaintiff's Complaint Does Not Show Repudiation.

Plaintiff has similarly failed to adequately plead that Defendants engaged in conduct that amounted to repudiation of the CBA's procedures for purposes of fitting within the second exhaustion exception. Repudiation occurs when, for example, an employer refuses to recognize the applicability of a collective bargaining agreement. *See Meredith v. Louisiana Federation of Teachers*, 209 F.3d 398, 402-03 (5th Cir. 2000). Plaintiff alleges that "Defendants have failed to respond to or proceed with the grievance independent of the Union," and includes a list of actions it claims Defendants did not take with respect to the grievance. Dkt. No. 1, ¶¶113, 118. But an allegation that management failed to respond to a grievance falls well short of triggering the repudiation exception. *Nat'l Football League Players Ass'n*, 874 F.3d at 229 n.7 ("An allegation

that an employer did not abide by the terms of a collective bargaining agreement during the grievance process is not equivalent to an allegation the employer refused to participate in the grievance procedures provided by the collective bargaining agreement. An allegation of the latter is required to show the repudiation exception applies.").  Here, there is no indication that Plaintiff ever presented his grievance to the Union. That Defendants did not subsequently act on the matter is, if anything, completely *consistent* with the formal process prescribed by the CBA rather than any repudiation of its terms. Plaintiff has not alleged facts to fit within this second exhaustion exception.

### c.      Plaintiff's Complaint Does Not Show Futility.

Finally, in a last-ditch attempt to meet the final exhaustion exception, Plaintiff concludes that exhausting the CBA's contractual remedies "would be futile because they would have to submit their claims to a group comprised entirely of representatives chosen by Defendants and the Union" against whom they bring their claims. Dkt No. 1, ¶122. Plaintiff pleads no additional facts to support this statement, and such bare legal conclusions must be disregarded. *Iqbal*, 556 U.S. at 679.  Moreover, the CBA's actual dispute resolution procedure provides that the final decision is to be made by an independent arbitrator, thus removing the possibility of the futility problem. *See Rabalais*, 566 F.2d at 519 (rejecting employee's futility argument when the CBA provided that the final decision was to be made by an independent arbitrator and neither the Union nor the employer took the matter to arbitration).  Because Plaintiff did not even properly invoke, much less exhaust, the CBA's grievance or arbitration procedures and does not fit within any exception to the exhaustion requirement, this court lacks jurisdiction over the LMRA claim, and the claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendants pray that the Court will dismiss the Complaint with prejudice and grant any other and further relief to which Defendants are entitled.

Dated: February 8, 2021

Respectfully submitted,

**HAYNES AND BOONE, LLP**

*/s/ Laura E. O'Donnell*
Laura E. O'Donnell
Texas State Bar No. 00797477
Jennifer Beth Ingram
Texas State Bar No. 24038972
Paloma Ahmadi
Texas State Bar No. 24088714
112 East Pecan Street, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7421
Facsimile: (210) 554-0421
laura.odonnell@haynesboone.com
jennifer.ingram@haynesboone.com
paloma.ahmadi@haynesboone.com

Melissa M. Goodman
Texas State Bar No. 00790648
Haynes and Boone, LLP
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
melissa.goodman@haynesboone.com

**COUNSEL FOR DEFENDANTS**
**SOUTHWESTERN BELL TELEPHONE L.P.**
**AND AT&T SERVICES, INC.**

## CERTIFICATE OF CONFERENCE

This is to certify that on February 5, 2021, I personally conferred with Glen Dunn, lead counsel for Plaintiff, via telephone and asked him to voluntarily dismiss this action.  Mr. Dunn stated that Plaintiff would not dismiss this lawsuit.

*/s/ Laura E. O'Donnell*
Laura E. O'Donnell

## CERTIFICATE OF SERVICE

This is to certify that on February 8, 2021, I served the foregoing Motion upon all parties and/or counsel of record, through the Court's CM/ECF system which will send a notice of electronic filing to counsel of record, as follows:

Glen J. Dunn, Jr.
GLEN J. DUNN & ASSOCIATES, LTD.
gdunn@gjdlaw.com

J. Derek Braziel
Travis Gasper
BRAZIEL DIXON, LLP
jdbraziel@l-b-law.com
gasper@l-b-law.com

Jeffrey Grant Brown
*Admission Pro Hac Vice Pending*
Jeffrey Grant Brown, P.C.
jeff@JGBrownlaw.com

**COUNSEL FOR PLAINTIFFS**

*/s/ Laura E. O'Donnell*
Laura E. O'Donnell